Date signed February 13, 2008



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
# at GREENBELT

In Re:

Rose Marie Toussaint,

        Debtor.

Case No. 01-12690-TJC

Chapter 7

## MEMORANDUM OPINION

Before the Court is the Motion for Approval of Proposed Compromise and Settlement (the "Application") filed by Roger Schlossberg, the Chapter 7 Trustee (the "Trustee"). Docket No. 74. Rosemarie Toussaint (the "Debtor") filed Debtor Rose Marie Toussaint's: (i) Objection to Trustee's Motion for Approval of Compromise and Settlement of Claims Against Howard University and (ii) Cross-Motion for Removal of Trustee Pursuant to 11 U.S.C. § 324(a) (the "Opposition" or the "Motion to Remove," as the case may be). Docket No. 75.

In the Application, the Trustee seeks to settle the estate's litigation claim against Howard University College of Medicine and Howard University Hospital (collectively,

"Howard").  In the Opposition, the Debtor objects to the settlement, and in the Motion to Remove, she seeks to remove the Trustee pursuant to 11 U.S.C. § 324(a).  For the reasons stated hereafter, the Court will: (1) deny the Application without prejudice; (2) deny the Motion to Remove.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Rule 402 of the United States District Court for the District of Maryland.  This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2) (A),(O).  The following constitute the Court's findings of fact and conclusions of law:

## I. FINDINGS OF FACT

A.   Procedural Background

On March 7, 2001, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code.  The Debtor received a discharge on June 18, 2001. The Debtor did not list a claim against Howard on her schedule of assets.  On July 19, 2001, the Trustee filed his Report of No Assets, signifying there were no assets in the estate that could be administered for the benefit of creditors.  The case was closed as a no asset case on July 24, 2001.

On October 18, 2004, the Trustee filed Trustee's Motion to Re-open Case and Withdraw Trustee's Report of No Distribution and For Other Relief.  Docket No. 10.  In that motion, the Trustee sought to reopen the Debtor's bankruptcy case in order to pursue a claim against Howard.  That motion was granted by order entered on October 25, 2004, and the Trustee was appointed pursuant to a notice issued by the United States Trustee on April 4, 2005.  After the Trustee filed a designation that the case contains assets available for administration, the Court issued a notice of need to file proofs of claims setting

January 20, 2006 as the bar date for filing proofs of claims. Four creditors filed proofs of claims in the total amount of approximately $13,600.

  B.  The Claim Against Howard.

The Debtor first filed her claim against Howard with the Equal Employment Opportunity Commission ("EEOC") in December, 1997. The EEOC conducted its administrative review of the Debtor's Claim. On April 28, 2000, the EEOC issued a determination regarding the Debtor's claim against Howard (the "EEOC Determination"). The EEOC Determination provided in pertinent part:

> On behalf of the Commission, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990.
>
> [The Debtor] alleges that she was subjected to hostile environment, denied tenure and promotion, and discharged based on her sex (female) in violation of Title VII of the Civil Rights Act of 1964, as amended. [The Debtor] further alleges that she was denied a reasonable accommodation for her disability in violation of the Americans with Disabilities Act of 1990.
>   ***
> The evidence shows that four candidates, including [the Debtor] were eligible for tenure and or promotions. The other three candidates were male. Two male candidates were granted tenure and the other male candidate was promoted from Instructor to Assistant Professor. Although it is the contention of the Respondent [Howard] that [the Debtor] did not do rounds, or take night calls which affected her possible tenure status, witness testimony contradict those contentions and prove otherwise. The evidence shows that [the Debtor] submitted just as strong a tenure application as her similarly situated male counterparts.
>
> Witness testimony further verifies sexist statements made by the Chairman, Department of Surgery, such as "This is a man's world and he was King of his castle" and "a woman will just mess things up". The nature of the statements as

3

> well as the frequency of the statements being made rose to the level of being severe and pervasive enough to cause a hostile work environment.
>
> The evidence further shows that on February 10, 1997, [the Debtor] submitted temporary partial disability medical documentation to substantiate her need for Respondent to accommodate her disability. Three hours later, [the Debtor] received a discharge letter which stated that her contract would not be extended beyond June 30, 1997.
>
> Based on the analysis, I have determined that there is reasonable cause to believe that [the Debtor] was subjected to a hostile work environment, denied tenure and promotion, and discharged because of her sex. As for [the Debtor]'s allegation that she was denied a reasonable accommodation, there is insufficient evidence to show that she had a disability which substantially limited a major life activity. However, it can be concluded that [the Debtor] was retaliated against in that she exercised her right to request an accommodation for her disability and she was subjected to the adverse action of employment termination.

Exhibit A to the Declaration of Shawna Becker, Docket No.75.

On January 3, 2003, the EEOC sent the Debtor a letter determining that its efforts to conciliate the Debtor's claim against Howard would not continue. As a result, the Debtor filed suit against Howard in the Superior Court for the District of Columbia in April, 2003. Howard subsequently removed the suit from the Superior Court to the United States District Court for the District of Columbia (the "District Court Case"). In the District Court Case, the Debtor alleged violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, and the District of Columbia Human Rights Act. In a preliminary expert report (the "Debtor's Damages Report") the Debtor's proposed expert witness calculated her approximated economic loss, from the date her employment ceased with Howard, to be $2.98 million.

After learning through discovery that the Debtor had been a debtor in the instant bankruptcy case, Howard initially sought to dismiss the Debtor's claims on the grounds that her allegedly wrongful failure to schedule her claims against Howard in her bankruptcy proceeding deprived her of standing to sue. Subsequently, the Trustee moved to be substituted as plaintiff and real party in interest in the District Court Case.

In a memorandum decision dated June 20, 2005, the District Court denied Howard's motion for dismissal. In that decision, the District Court substituted the Trustee as plaintiff for the Debtor's monetary claims, but not her equitable claims. The District Court reversed this portion of its ruling in a subsequent decision dated November 8, 2005, holding that the Trustee would be substituted as the sole plaintiff on all portions of the Debtor's claims.

### C. The Settlement With Howard

On March 20, 2006, the Trustee filed his initial motion to approve a proposed settlement with Howard (the "First Settlement Motion"). The substance of that settlement provided that the Trustee would release all pre-petition claims that the Debtor holds against Howard in exchange for $25,000. The Debtor opposed that settlement and the Court held a hearing on the First Settlement Motion in July, 2006. At the hearing, the Trustee announced that he had begun negotiating a potential agreement with the Debtor under which the Debtor would be afforded the right to pursue her claims against Howard. In light of these negotiations, the Court continued the hearing on the First Settlement Motion for two weeks. At the continued hearing on the First Settlement Motion, Howard announced that it withdrew from the settlement, thus prompting the Trustee to withdraw the First Settlement Motion. See Docket No. 68.

The parties explained that the Debtor and the Trustee discussed two potential resolutions of the dispute between the Debtor and the Trustee. The first potential resolution involved the Debtor purchasing the claim back from the Trustee for the same amount as the Howard settlement, i.e. $25,000. This resolution would have enabled the Debtor to pursue her claim against Howard while allowing the Trustee to pay all creditors in full. According to Debtor's counsel, however, the Debtor does not have the necessary funds to purchase the claim.

The second proposed resolution provided that the Debtor's current counsel would represent the Trustee in the District Court Case on a contingency basis. This solution would provide the Trustee with the ability to prosecute the District Court Case with minimal out of pocket expense, which is necessary because the estate has no funds or other resources. The Debtor, however, initially refused to waive the conflict to allow her counsel to represent the Trustee or to agree to give control of the litigation to the Trustee.

The Debtor and the Trustee were unable to come to terms. On April 26, 2007 the Trustee filed the Application again seeking to settle the Debtor's pre-petition claims against Howard for $25,000. The Debtor then filed the Opposition and the Motion to Remove. The Court held a hearing on the Application on July 11, 2007.

At the hearing, the Trustee testified that, in his business judgment, a $25,000 settlement of the claim against Howard is in the best interest of the estate. In making this determination, the Trustee (1) reviewed documents from the District Court Case that were provided to him; (2) discussed the merits of the case with the Debtor's counsel; and (3) discussed the merits of the case with Howard's counsel. Based on this review, the Trustee questioned whether the Debtor could establish liability against Howard. The

6

Trustee pointed to the Debtor's Damages Report which shows that the Debtor earned over $270,000 four years after she was allegedly damaged by Howard's conduct and believed that her ability to earn such a substantial amount undermined the ability of the Debtor to establish both liability on the claim and damages. The Trustee recognized, however, that in subsequent years the Debtor's income dropped substantially.

In addition, the Trustee testified that he is not confident that the Debtor will be cooperative in pursuing the claim against Howard. In support of this belief, the Trustee stated that he requested to meet with the Debtor in June of 2006 to evaluate her as a plaintiff and potential witness, and the Debtor refused. As such, the Trustee stated that he could not determine, without meeting with the Debtor, whether she would cooperate with him in his pursuit of the case or whether she would be a credible witness.

The Trustee also testified that he was not an employment lawyer and did not have the requisite expertise to litigate the claim against Howard. The Trustee acknowledged that the Debtor ultimately agreed, in October 2006, to waive the conflict to allow her counsel to represent the Trustee on a contingency basis to pursue the claim against Howard. He testified, however, that by that time, he had lost interest in pursuing this strategy because of what he viewed as bad faith by the Debtor in refusing to meet with him, her prior refusal to waive the conflict or provide him with control of the litigation, and her failure to make a bona fide offer to buy the claim.

The Debtor did not appear at the hearing. Her counsel submitted into the record various documents, including the EEOC Determination, the Debtor's Damages Report and the letter of October 26, 2006, in which the Debtor agreed to waive any conflict in order to allow her counsel to represent the estate on a contingency fee basis and that the

7

proceeds from the District Court Case would be allocated 80% to the estate and 20% to the Debtor.  The Debtor also submitted into the record two affidavits from her attorneys.  In one of the affidavits, the Declaration of Shana Becker (the "Becker Affidavit"), Ms. Becker states that she called the Trustee on a number of occasions and she spoke to him ten times, and had sent him emails and letters as well.  The Becker Affidavit was dated April 10, 2006, some 15 months before the hearing on the Application.  These documents were admitted without objection.

## II.    CONCLUSIONS OF LAW

### A.    Approval of the Settlement

Pursuant to Fed. R. Bankr. P. 9019(a) "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  A Court may approve a settlement if it is "fair and equitable."  Protective Comm. for Independent Stock Holders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424, 88 S.Ct. 1157, 1163-64, 20 L. Ed. 2d 1, 9-10. (1968).  In making this determination, a court must be apprised "…of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated."  Id.  In addition, a court "…should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise."  Id.

Against that backdrop, in order to approve a settlement, a court must consider the following factors:

    (1) the probability of success in litigation;

>   (2) the likely difficulties in collection;
>
>   (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and
>
>   (4) the paramount interest of the creditors.

Will v. Northwestern Univ. (In re Nutraquest, Inc.), 434 F.3d 639, 644 (3d Cir. 2006) (quoting Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996); See also, In re Bowman, 181 B.R. 836, 843 (Bankr. D. Md. 1995).  "Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation."  TMT, 390 U.S. at 424-425.  While the approval of a settlement is within the discretion of the bankruptcy court, it must actually exercise discretion and not simply "rubber stamp" the Trustee's proposal.  Depoister v. Mary M. Holloway Found., 36 F.3d 582, 587 (7th Cir. 1994) (citing In re American Reserve Corp., 841 F.2d 159, 162 (7th Cir. 1987).  "A court may approve a settlement over objections unless the proposed settlement falls below the 'lowest point of reasonableness.'"  United States ex rel. Rahman v. Oncology Assocs., P.C., 269 B.R. 139, 149-150 (D. Md. 2001), affid, United States ex rel. Rahman v. Colkitt, 61 Fed. Appx. 860 (4th Cir. 2003) (quoting In re W.T. Grant Co., 699 F.2d 599, 608, 613 (2d Cir.), cert. denied, 464 U.S. 822, 104 S.Ct. 89, 78 L. Ed. 2d 97 (1983).  "A settlement should be approved if it provides for 'the best possible realization upon the available assets . . .without undue waste or needless or fruitless litigation.'"  Oncology Assocs., 269 B.R. at 150 (quoting In re Bowman, 181 B.R. at 847).  "The Trustee, as proponent of the proposed settlement, has the burden of establishing that the settlement is fair and equitable and should be approved by the Court."  In re Kay, 223 B.R. 816, 819 (Bankr. M.D. Fla. 1998)(citing In re A & C

Properties, 784 F2d 1377, 1381 (9th Cir. 1986), cert. denied sub nom., 479 U.S. 854, 107 S.Ct. 189, 93 L.ed. 2d 122 (1986)).

Based on the record as presented, the Court cannot find that the Trustee carried his burden of showing that the settlement is "fair and equitable" or is above the "lowest point of reasonableness." The Court is unable, based on the relatively sparse facts presented by the Trustee, to assess the wisdom of the compromise. Specifically, the Court cannot determine: (1) the probability of success if the litigation was to go forward; and (2) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it.

The Trustee urges the Court to approve the settlement primarily for two reasons. First, the Trustee states, after reviewing documents from the District Court Case that were provided to him, and after discussing the case with the Debtor's and Howard's counsel, he determined, based on his business judgment, the settlement is fair and appropriate. But while a trustee's business judgment to enter into a settlement is afforded substantial weight, a court cannot rubber stamp a trustee's proposal. See, Depoister, 36 F.3d at 587. Rather, as mandated by the Supreme Court in TMT, a court must be apprised of the "facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated." 390 U.S. at 424.

In this regard, the most probative evidence -- if not the only evidence going to the merits of the District Court case -- is the EEOC Determination. There, the EEOC found "that there is reasonable cause to believe that [the Debtor] was subjected to a hostile work environment, denied tenure and promotion, and discharged because of her sex." See Supra at 3-4. The EEOC further "concluded that [the Debtor] was retaliated against in

10

that she exercised her right to request an accommodation for her disability and she was subjected to the adverse action of employment termination." Id. Moreover, the Debtor's Damages Report estimates the Debtor's actual damages to be in excess of $2.9 million. Standing alone, these two documents lead to the conclusion that a $25,000 settlement of the claim is not fair and equitable. The Trustee did not provide a sufficient record to overcome that conclusion.

Second, the Trustee testified that the Debtor has refused to meet with him and therefore he has not been able to assess her demeanor as a witness or her resolve as a party litigant. In addition, the Trustee is frustrated because the Debtor (1) refused to relinquish control of the litigation to him and refused to allow her counsel to represent him in the District Court Case until the fall of 2006; and (2) negotiated with him, according to the Trustee, in bad faith in the summer of 2006 with respect to the possibility of the Debtor buying back the claim from the Trustee.

It is extraordinarily troubling, to say the least, that the Debtor has refused to meet with the Trustee to discuss the case and to allow the Trustee to assess the Debtor's presentation as a witness. This is particularly true in this case, where, in light of the small amount of claims against the estate, any further pursuit of the District Court Case will serve to benefit the Debtor personally, and not the creditors. Debtor's counsel explained that the relationship between the Trustee and the Debtor had become "adverse" and "hostile" and therefore the Debtor and her counsel believed nothing would be gained by attending a meeting. The Court finds no justification for this position. The Court, however, will not penalize the Debtor by approving a settlement on this record because of

what appears to be an ill-conceived litigation strategy.[1]  But the Debtor and her counsel are forewarned:  The Debtor's further refusal to meet with the Trustee or her failure to cooperate fully in pursuit of the District Court Case may lead to the conclusion that the proposed settlement, in which the creditors are paid in full but no value would be realized by the Debtor, is fair and equitable under the circumstances.

Finally, the Court notes that counsel for Howard, in his closing argument, averred numerous factual allegations about the merits and the posture of the District Court Case that would be relevant to the Court's evaluation of the settlement.  These recitals were not part of the evidentiary record.  These allegations and similar facts regarding the merits of the District Court Case, if made part of the evidentiary record, may result in the Court reaching a different conclusion on the fairness of the proposed settlement.

The Court recognizes that the claim against Howard is a difficult asset for the Trustee to administer.  First, the Debtor failed to include the asset on her schedules of assets filed in the bankruptcy case.[2]  It wasn't until three years after the bankruptcy case was closed that the Trustee learned of the claim.  By then the claim was more than seven years old.  Further, and more significantly, other than the potential recovery from Howard, there are no assets in the Debtor's bankruptcy estate.  Thus, from the outset, the Trustee was faced with the problem of how to realize value from the claim or finance the litigation against Howard.  But once the Debtor agreed to allow her counsel to represent the Trustee, and given counsel's willingness to do so on a contingency fee basis, it was incumbent on the Trustee to explore the viability of that option further.

---

[1] Based on the record before it, the Court has serious misgivings as to whether the Debtor herself (as opposed to her counsel) has any interest in pursuing the District Court Case.
[2] The judge to whom the District Court Case is assigned has ruled that the Debtor's failure to list the claim on her schedules was an honest and understandable mistake, and hence excusable.  <u>Toussaint v. Howard Univ.</u>, Case No. 03-1395 (JDB), Slip Op. at p.6 (D.D.C, June 20, 2005),

12

In sum, it may be that a $25,000 settlement of the District Court Case is a fair and equitable settlement. However, for the foregoing reasons the Court finds and concludes that the Trustee did not carry his burden of establishing that. This finding and conclusion is made without prejudice, however, to the Trustee's further determination in light of (1) his assessment of the Debtor's willingness to support the District Court Case and demeanor as a witness upon meeting her; (2) his further exploration of the viability of having Debtor's counsel represent him on a contingency fee basis; and (3) further development, or at least presentation, of the facts from which the Court can assess the likelihood of the Debtor's success and the cost and complexity of the District Court Case.

    B.    <u>Motion to Remove</u>

Pursuant to 11 U.S.C. § 324(a), "the court, after notice and a hearing, may remove a trustee…for cause." What constitutes sufficient cause is not defined in the Bankruptcy Code. As such, courts must make the determination on a case by case basis. <u>Miller v. Miller (In re Miller)</u>, 302 B.R. 705, 709 (B.A.P. 10th Cir. 2003) (citing <u>In re Haugen Constr. Serv., Inc.</u>, 104 B.R. 233, 240 (Bankr. D.N.D. 1989)). "[R]emoval of a Trustee is an extreme remedy even where a trustee has acted negligently." <u>In re Sheehan</u>, 185 B.R. 819, 822 (Bankr. D. Ariz. 1995) (citing <u>In re Cee Jay Discount Stores, Inc.</u>, 171 B.R. 173, 175 (Bankr. E.D.N.Y. 1994)).

> A Chapter 7 trustee is given a substantial degree of discretion in deciding how to administer the bankruptcy estate and his or her actions are governed by a business judgment standard.… [A] trustee will not be removed for mistakes in judgment where the judgment is discretionary and reasonable under the circumstances.

Alan N. Resnick et al., Collier on Bankruptcy, ¶ 324.02 (15th ed. 2007).

The Court finds and concludes that the Debtor has provided no basis to support her claim that the Trustee should be removed in this case.  Indeed, the only evidence the Debtor presented in support of the Motion to Remove was the Becker Affidavit, which stated that she attempted to contact the Trustee by telephone twenty-six times between September 20, 2004 and July 13, 2005, and that the Trustee had talked to her ten times during that period.  During that time she also sent him a number of emails and letters.

The Debtor's motive in submitting the Becker Affidavit is unclear. It provides little probative value on the Motion to Remove.  It is dated April 10, 2006, more than one year before the Debtor filed the Motion to Remove and some 15 months before the hearing on the motion.  If anything, it establishes that the Trustee spoke to one of Debtor's counsel ten times during the period covered by the affidavit.  Further, the Debtor is represented in these proceedings by two law firms as well as the Washington Lawyers Committee for Civil Rights and Urban Affairs.  The record is clear that the Trustee engaged in conversations and correspondence with lawyers from each of the three entities on a number of occasions.  Thus, at best, the Becker Affidavit provides an incomplete picture of the relationship between the Trustee and Debtor's counsel.  As an example, the Becker Affidavit states that "To my knowledge, since the initial administration of Dr. Toussaint's bankruptcy case in 2001, Mr. Schlossberg has not interviewed or met with Dr. Toussaint, nor has he requested that I or my firm arrange such a meeting or interview."  Becker Affidavit at ¶5.  But the Debtor readily acknowledged at the hearing that the Trustee requested to meet with the Debtor in June 2006, through lawyers other than Ms. Becker.

14

The Court concludes that the Motion to Remove was simply filed as part of the Debtor's effort to prevent the Trustee from obtaining approval of the settlement with Howard. Although as stated above, the claim against Howard is a difficult asset for the Trustee to administer, he nevertheless timely and properly sought to reopen the Debtor's bankruptcy case to administer it. The Trustee embarked on several strategies to resolve the claim, including (1) having the Debtor acquire it from the estate; (2) exploring having the Debtor's counsel represent the estate in the District Court Case and (3) settling with Howard.

The Trustee's difficulty in administering the asset was further complicated by the Debtor's refusal to meet with the Trustee or, for a substantial period of time, to allow her counsel to represent the Trustee. As a result, the Trustee twice agreed to a settlement with Howard that would provide a 100% distribution to creditors.

Even though the Court has not approved the proposed settlement with Howard, based on the foregoing facts and the record before it, the Court finds that the Trustee acted reasonably in pursuing the settlement. The Court finds no cause to remove the Trustee.

### III.     CONCLUSION

For the forgoing reasons, the Court will deny the Application without prejudice. Additionally, the Court will deny the Motion to Remove.

Copies To:

Debtor
Debtor's Attorney

Trustee
Trustee's Attorney
U.S. Trustee
Howard's Attorney
All Creditors on Mailing Matrix

**END OF MEMORANDUM**